# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

1) HAROLD MOORE, )
2) MARIA C. KARRES, )
                                        )
   **Plaintiffs,**           )
                                        )
v.                                      )        Case No. 17-CV-124-JHP
                                        )
1) BETTY ROPER, )
2) JAYLIE JO ROPER FINLEY, )
                                        )
   **Defendants.**        )

## OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss (Dkt. 17), Plaintiffs' Objection and Response (Dkt. 22), and Defendants' Reply (Dkt. 23). After consideration of the briefs, and for the reasons stated below, Defendants' Motion to Dismiss is **DENIED**.

## BACKGROUND

This case stems from the sale of a barrel racing horse named Clear Boggy a/k/a Crazy Train. According to the Complaint (Dkt. 2), Plaintiff Harold Moore ("Plaintiff Moore") was in the market to buy a suitable "1-D" barrel racing horse for his daughter, and he engaged Plaintiff Maria C. Karres ("Plaintiff Karres") to facilitate the purchase of such a horse. (*Id.* ¶ 10). In August 2016, Plaintiff Karres was in Oklahoma along with Mr. Adda Waddell ("Waddell"), a professional barrel racing competitor and trainer, to train a barrel racing horse. (*Id.* ¶ 11). Plaintiff

Karres and Waddell met Defendant Betty Roper, who was appraising horses owned by Waddell. (*Id.*). Plaintiff Karres learned that Betty Roper's granddaughter, Defendant Jaylie Jo Roper Finley ("Finley"), was interested in selling her 1-D horse named Clear Boggy a/k/a Crazy Train, because she was planning her wedding and did not have time to compete. (*Id.*). Roper further advised she thought Finley over-rode the horse and would perform better under someone such as Waddell. (*Id.*). Roper also stated to Plaintiff Karres that Clear Boggy had no history of difficult behavior and would be well suited for a young rider such as Plaintiff Moore's daughter. (*Id.*).

Plaintiff Karres reviewed Finley's promotional social media posts and videos promoting Clear Boggy for sale. (*Id.* ¶ 12). Plaintiff Karres and Waddell inquired as to medical issues, veterinary treatments, or other maintenance work pertaining to the horse, and Betty Roper assured them that Clear Boggy had been given only common medical treatments called "hock injections," along with blistering of the horse's hocks. (*Id.*). Defendants Betty Roper and Finley (together, "Defendants") did not disclose any performance issues that Clear Boggy experienced in barrel racing competitions. (*Id.* ¶ 13). Plaintiffs Moore and Karres (together, "Plaintiffs") allege they relied on Defendants' experience, skill, and knowledge about Clear Boggy and the horse's medical condition, treatments, and performance history in deciding to purchase the horse for 1-D competitive barrel

2

racing, and Defendants knew of Plaintiffs' interest in learning of any injuries, treatments, conditions, or behaviors that would impede the horse's ability to compete. (*Id.* ¶¶ 14-15).

Plaintiffs purchased Clear Boggy from Defendants for $100,000. (*Id.* ¶¶ 10, 16). Plaintiff Karres contacted veterinarian Dr. Bill Mitchell, who Defendants represented was the only veterinarian to care for the horse, to fill out an equine mortality insurance policy in order to secure insurance coverage on Clear Boggy pending completion of the transaction. (*Id.* ¶ 17). After the policy was issued, Plaintiff Moore wired the $100,000 purchase price to Betty Roper on October 17, 2016. (*Id.*).

Shortly after the purchase, Clear Boggy began exhibiting significant performance problems, including nervousness, unwillingness to practice, and stalling on the first barrel during runs. (*Id.* ¶¶ 18-20). Plaintiff Karres contacted Finley for advice, and Finley then disclosed that the horse had stalled on the first barrel in a competition earlier in 2016. (*Id.* ¶ 21). When Plaintiff Karres contacted Betty Roper, she revealed that Clear Boggy had received four shoulder injections prior to the sale. (*Id.*). After further performance problems, Clear Boggy was transported for medical examination. (*Id.* ¶ 23). The examining veterinarian discovered an older hind leg fracture that had not properly healed. (*Id.*). Further examination by an equine surgeon revealed Clear Boggy suffered from arthritis,

3

impinged vertebrae, and navicular changes in the front left foot, in addition to the older right hind leg fracture. (*Id.* ¶ 24). Plaintiffs then obtained video evidence from a 2016 competition, occurring weeks prior to the sale, in which Clear Boggy had stalled at the first barrel. (*Id.* ¶ 27). Plaintiffs also learned from another competition participant that the horse had been "scratched" from the final performance in the 2016 competition because he was injured. (*Id.*). Ultimately, veterinarians recommended surgery to repair Clear Boggy's hind leg fracture. (*Id.* ¶ 25). According to Plaintiffs, Clear Boggy remains unfit for barrel racing purposes, meaning he cannot compete or generate earnings or prize money. (*Id.* ¶ 50).

Plaintiffs allege Defendants knew of Clear Boggy's injuries and performance issues at the time of sale, and knew Plaintiffs were purchasing Clear Boggy for the express purpose of 1-D competitive barrel racing, but they intentionally withheld the information in order to close the sale and increase the price. (*Id.* ¶¶ 29-31). Plaintiffs allege they relied on Defendants' experience, skill, knowledge, and judgment about Clear Boggy in making the purchase. (*Id.* ¶ 30). In this matter, Plaintiffs brings claims against Defendants for (1) fraud and deceit; (2) breach of the implied warranty of fitness for a particular purpose; (3) breach of the implied warranty of merchantability; (4) unjust enrichment; and (5) breach of

contract for the sale of goods. (*Id.* ¶¶ 32-74). Plaintiffs seek various monetary damages, as well as attorney's fees and costs. (*Id.*).

Defendants have now moved to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 17). Plaintiffs filed an Objection and Response in opposition (Dkt. 22), and Defendants filed a Reply (Dkt. 23). The pending motion is fully briefed and ripe for review.[1]

## DISCUSSION

### I. Standard of Review

In considering a Rule 12(b)(6) motion, the court must accept all well-pleaded allegations of the complaint as true, and must construe them in the light most favorable to the plaintiff. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008). "Generally, the sufficiency of a complaint" when challenged by a 12(b)(6) motion "must rest on its contents alone.[2] *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). *See* Fed. R. Civ. P. 12(d). To withstand a motion to dismiss, a complaint must contain enough allegations of

---

[1] The Motion to Dismiss also seeks dismissal of all claims against Defendant Jimmy Roper. On February 16, 2018, Plaintiffs filed a Notice of Dismissal of Claims Against Defendant Jimmy Roper, in which Plaintiffs dismiss the claims against Jimmy Roper without prejudice. (Dkt. 33). Because Jimmy Roper has been terminated from this matter, the Court will not address the merits of Jimmy Roper's arguments for dismissal of the claims against him.

[2] In their Response brief, Plaintiffs ask the Court to exclude all facts brought to its attention outside the Complaint in Defendants' Motion to Dismiss. The Court declines Plaintiffs' invitation to strike any portion of Defendants' brief. However, to the extent Defendants raise legal arguments in their brief that rely on facts not available in the Complaint, the Court excludes such facts from its consideration. The Court addresses Defendants' individual arguments below as they pertain to each claim.

fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff bears the burden to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly,* 550 U.S. at 556. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

> [T]he *Twombly/Iqbal* standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do. In other words, Rule 8(a)(2) still lives. Under Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.

*Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235-36 (10th Cir. 2013) (quoting *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012)).

In addition, a fraud claim must satisfy Fed. R. Civ. P. 9(b), which requires the circumstances constituting fraud must be alleged "with particularity," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In the Tenth Circuit, a complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch*

*Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)) (quotation marks omitted).

## II. Fraud and Deceit (Count 4)

First, Defendants contend Plaintiffs' claim for fraud and deceit (Count 4) must be dismissed as insufficiently pled. The four elements of fraud are well settled in Oklahoma: "(1) a false material misrepresentation; (2) made as a positive assertion which is either known to be false, or made recklessly without knowledge of the truth; (3) with the intention that it be acted upon; and (4) which is relied upon by a party to one's detriment." *Gay v. Akin*, 766 P.2d 985, 989 (Okla. 1988) (citations omitted). "It is equally well settled that the concealment of material facts which one is bound under the circumstances to disclose, may constitute fraud." *Varn v. Maloney*, 516 P.2d 1328, 1332 (Okla. 1973) (citation omitted). However, mere opinion and "broad, general statements made by a seller about the value or quality of what he or she is selling" are not actionable as fraudulent. *Pine Tel. Co., Inc. v. Alcatel-Lucent USA, Inc.*, 2014 WL 318331, at *7 (E.D. Okla. Jan. 29, 2014) (applying Oklahoma law), *aff'd in part, rev'd in part on other grounds*, 617 F. App'x 846 (10th Cir. 2015).

Defendants contend the statements identified in the Complaint as false are not actionable, because either they were opinion statements or Plaintiffs were not

justified in relying on them.  In response, Plaintiffs argue the Complaint focuses on Defendants' unique personal knowledge of certain important facts that Defendants knowingly concealed from Plaintiffs about Clear Boggy's prior injuries and medical conditions, and how these matters had affected the horse's performance.

The Court agrees with Plaintiffs that the fraud and deceit claim is sufficiently pled against both Defendants.  The Complaint alleges the contents and circumstances of the allegedly false representations.  Plaintiffs allege Betty Roper, in response to Plaintiff Karres' and Waddell's inquiry as to Clear Boggy's medical issues, veterinary treatments or maintenance work, informed them that Clear Boggy had been given only common medical treatments called hock injections, along with the blistering of the horse's hocks.  (Dkt. 2, ¶ 12).  Plaintiffs further allege:

> Defendants did not disclose any other medical problems or treatments of Clear Boggy during their ownership of the horse, even though Defendants knew Plaintiffs were interested in the medical history of the horse because of their desire to buy the horse for competitive barrel racing.  Defendants did not disclose any performance issues experienced by Clear Boggy in barrel racing competitions.  None of the promotional videos posted by Defendant Finley revealed any negative performance issues.

(*Id.* ¶ 13).  Plaintiffs allege reliance on "Defendants' experience, skill, and knowledge about Clear Boggy and the horse's medical condition, treatments, and performance history," and they reiterate in Paragraph 15 of the Complaint that Defendants "knew that Plaintiffs were interested in learning of any medical

8

conditions, injuries, or behaviors which would impede the horse's ability to compete." (*Id.* ¶ 15).

Following the purchase, Plaintiffs allege they learned that Finley had "cherry picked" her promotional videos of Clear Boggy's performance to omit videos showing Clear Boggy's performance issues. (*Id.* ¶¶ 20-21, 27). Plaintiffs allege Betty Roper revealed after the sale that Clear Boggy had been given shoulder injections by an undisclosed veterinarian prior to the sale. (*Id.* ¶ 21). Plaintiffs learned after the sale that Clear Boggy suffered from an older fracture of the hind leg and other conditions that neither Betty Roper nor Finley had disclosed. (*Id.* ¶¶ 23-24). Plaintiffs also witnessed video footage from a 2016 competition in which Clear Boggy, ridden by Finley, stalled at the first barrel, and they learned from another participant that Clear Boggy was injured at that event. (*Id.* ¶ 27).

These allegations of the circumstances of fraud are sufficiently particular to satisfy Rule 9(b). *See Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1324 (10th Cir. 1998) ("One conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud, even though his statement is true as far as it goes, since such concealment is in effect a false representation that what is disclosed is the whole truth.") (applying Oklahoma law). These allegations also suffice to state a claim for deceit under 76 Okl. St. § 3, as Plaintiffs allege Defendants engaged in the "suppression of a fact by one who is bound to disclose

9

it, or who gives information of other facts which are likely to mislead for want of communication of that fact." 76 Okl. St. § 3(3).

Moreover, under Oklahoma law, Defendants cannot defeat Plaintiffs' fraud claim based on Waddell's familiarity with barrel horses or Plaintiffs' failure to obtain an independent medical evaluation prior to sale. "It is sufficient for present purposes to say that one who has misled another by a fraudulent misrepresentation cannot escape the ordinary consequences of his wrong by showing that, although his victim in fact knew nothing of the matter, knowledge was to be imputed to him on some legal theory." *Uptegraft v. Dome Petroleum Corp.*, 764 P.2d 1350, 1354 (Okla. 1988) (quotation omitted). Accordingly, the Court rejects Defendants' request to dismiss the fraud and deceit claim against either Betty Roper or Finley.

## III. Implied Warranty of Fitness Claim (Count 1)

Next, Defendants argue Plaintiffs fail to state a claim for implied warranty of fitness for a particular purpose (Count 1). Plaintiffs' implied warranty claim is governed by Oklahoma's Uniform Commercial Code ("UCC"), 12A Okl. St. § 1-101, *et seq.* 12A Okl. St. § 2-316(3)(d) ("the implied warranties of merchantability and fitness shall apply to the sale or barter of horses."). To state a claim for breach of implied warranty of fitness for a particular purpose under 12A Okl. St. § 2-315, a plaintiff must show (1) the seller knew the goods would be used for a particular purpose and (2) the buyer relied on the seller's skill or judgment in selecting

10

suitable goods. *See Crysco Oilfield Servs. v. Hutchison-Hayes Intern., Inc.*, 913 F.2d 850, 852 (10th Cir. 1990) (applying Oklahoma law).

First, Defendants argue Plaintiffs waived the implied warranty of fitness claim by failing to take the opportunity to examine the horse prior to purchase. *See* 12A Okl. St. § 2-316(3)(b); *Ladner v. Jordan*, 848 So.2d 870, 873 (Miss. Ct. App. 2002). Under § 2-316(3)(b):

> when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him.

In response, Plaintiffs contend Defendant's argument is based on facts and legal conclusions not present in the Complaint itself and should therefore be disregarded for purposes of this motion. The Court agrees with Plaintiffs that Defendants' argument as to waiver is premature at this stage. It is unclear at this stage whether an examination under the circumstances ought to have revealed Clear Boggy's performance issues or latent medical problems prior to purchase. The Complaint alleges Clear Boggy's performance issues were not apparent until his second competition run following Plaintiffs' purchase (*see* Dkt. 2, ¶ 18), and the full extent of Clear Boggy's pre-existing injuries were not known until he received a bone scan at Oklahoma State University's College of Veterinary

Medicine (*id.* ¶ 24). Accordingly, the Court will not dismiss Plaintiffs' claim on this basis.

Second, Defendants argue Plaintiffs have failed to show justified reliance on Defendants' skill or judgment to support this claim. In this regard, Defendants rely heavily on their assertion that Waddell, an experienced competitor and trainer, was acting as Plaintiffs' agent during the transaction to purchase Clear Boggy. Defendants contend the use of Waddell as an "experienced and highly skilled agent," combined with Dr. Mitchell's veterinary certification in order to secure an equine mortality policy and Plaintiffs' failure to inspect the horse thoroughly prior to purchase, negate any allegations in the Complaint that Plaintiffs relied on the Defendants' representations, skill, or judgment. (*See* Dkt. 17, at 14).

In response, Plaintiffs argue the Complaint establishes Plaintiffs' reliance on Betty Roper's unique knowledge of barrel racing horses, skill as a horse appraiser, and competitive skill in deciding to purchase Clear Boggy as a competitive 1-D barrel racing horse. (*See* Dkt. 2, ¶¶ 10-15, 21, 27, 28, 33-36). Plaintiffs further argue the Complaint establishes Plaintiffs' reliance on Finley, a rider of Clear Boggy in 1-D barrel racing competitions, and her video representations on social media of her riding the horse in competitions, for her unique knowledge about the horse's fitness, health, and medical and performance history. (*See id.* ¶¶ 12, 20, 21, 27, 28, 33-36). Plaintiffs also point out that the Complaint does not allege

12

Waddell was Plaintiffs' agent, nor does his presence at the point of purchase with Plaintiff Karres establish Waddell as an agent for this purchase.

The Court agrees with Plaintiffs that reliance is sufficiently pled. The Complaint alleges that Betty Roper's and Finley's representations about Clear Boggy's performance and medical history formed the basis for Plaintiffs' interest in purchasing the horse for competitive 1-D barrel racing. (*Id.* ¶ 14). Plaintiffs further allege facts establishing that Plaintiffs relied on Betty Roper's and Finley's unique experience, skill, and knowledge about the horse in deciding to purchase Clear Boggy. (*Id.* ¶¶ 11-15). Plaintiffs' consultations with Waddell and Dr. Mitchell prior to sale do not necessarily negate the allegations of reliance, particularly at this stage.

Third, Defendants argue this claim against Finley should be dismissed, because the Complaint fails to plead facts to show that Plaintiffs affirmatively informed her of the specific purpose they intended for the horse. However, the Complaint pleads that Betty Roper was aware of Plaintiffs' intent to purchase the horse for 1-D barrel racing competitions, and both she and Finley promoted Clear Boggy for sale as a competitive barrel racing horse. (Dkt. 2, ¶¶ 11-13). At the pleading stage, these allegations suffice to plausibly allege Finley knew Clear Boggy would be used as a 1-D barrel racing competitor. Accordingly, the Court

denies Defendants' request to dismiss the implied warranty of fitness claim against either Defendant.

## IV. Implied Warranty of Merchantability (Count 2)

Next, Defendants argue Plaintiffs fail to state a claim for breach of implied warranty of merchantability (Count 2). To state such a claim, a plaintiff must first plead that the seller is a "merchant with respect to goods of that kind." 12A Okl. St. § 2-314(1). Defendants argue the Complaint is deficient in this regard, because Plaintiffs merely allege in a conclusory manner that "Defendants are merchants under the definition set out in" 12 Okl. St. § 2-104 and that "Defendants are engaged in the training, riding, and sale of competitive barrel racing horses." (Dkt. 2, ¶¶ 43-44). The Court finds this element of the claim is sufficiently pled and offers more than labels and conclusions, because the Complaint specifically alleges Defendants are engaged in the training, riding, and sale of competitive barrel racing horses. (*Id.* ¶ 44). Requiring more particularized facts at the pleadings stage would amount to a requirement of heightened fact pleading, which is not appropriate for this claim. The Court will not dismiss this claim on this basis.

Second, Defendants argue Plaintiffs have failed to allege a breach of the implied warranty of merchantability occurred. Under Oklahoma law, goods are "merchantable" if they are fit for their ordinary purpose. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1288 (10th Cir. 2013) (citing *Perry v. Lawson Ford Tractor Co.*,

14

613 P.2d 458, 463 (Okla. 1980)). Merchantability of goods "connotes not best quality or perfection in detail, but it does require, at the very least, that the goods operate for their ordinary purpose." *Am. Fertilizer Specialists v. Wood*, 635 P.2d 592, 595 (Okla. 1981) (citing *Perry*, 613 P.2d at 463). Defendants argue the conditions Plaintiffs complain of—difficult behavior and curable injuries—do not render the horse unmerchantable.

With respect to Clear Boggy's alleged behavioral issues, Defendants assert a horse with mere psychological challenges is still merchantable. *See, e.g., O'Connor v. Judith B. & Roger C. Young, Inc.*, 1995 WL 415138, at \*4 (N.D. Cal. June 30, 1995) (noting implied warranty of merchantability "generally does not support recovery for psychological idiosyncracies [sic]" such as general unmanageability, bad habits, or unpleasant disposition). However, the behavioral issues alleged in the Complaint are not necessarily separate from Clear Boggy's underlying medical conditions and, in any event, could amount to more than mere idiosyncratic behavior. (*See* Dkt. 2, ¶¶ 18-20, 23-25).

With regard to the alleged physical injuries, Defendants argue the conditions are curable with time, rest, and treatment, and therefore not actionable on an unmerchantability claim. It is unclear from the Complaint whether surgery cured Clear Boggy's issues arising from the leg fracture and whether time, rest, and treatment would cure Clear Boggy's conditions to render him "merchantable" as a

15

barrel racing horse. However, Plaintiffs allege Clear Boggy remains unfit for barrel racing purposes, rendering him unmerchantable (Dkt. 2, ¶ 50), which the Court takes as true for purposes of Defendants' motion. At the pleadings stage, before discovery reveals the full extent of Clear Boggy's physical issues, the Court will not dismiss Plaintiffs' implied warranty of merchantability claim on this basis.

Defendants further argue that, as for the implied warranty of fitness claim, Plaintiffs have waived their implied warranty of merchantability claim because they failed to examine the horse prior to purchase. However, as explained above with respect to the implied warranty of fitness claim, the alleged latent defects in Clear Boggy's performance and medical conditions would not necessarily have been apparent from an ordinary inspection. *See* 12A Okl. St. § 2-316(3)(b). Accordingly, the Court denies Defendants' request to dismiss this claim.

## V. Unjust Enrichment (Count 3)

Defendants next seek dismissal of Plaintiffs' unjust enrichment claim. An unjust enrichment claim requires "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another." *Okla. Dep't of Sec. ex rel. Faught v. Blair*, 231 P.3d 645, 658 (Okla. 2010). "To recover for unjust enrichment there must be enrichment to another coupled with a resulting injustice." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1030 (10th Cir. 2007) (applying Oklahoma law) (quotation omitted). An unjust enrichment claim is centered on "whether the

party against whom relief is sought has engaged in wrongful conduct." *Ex rel. Faught*, 231 P.3d at 659.

Defendants argue Plaintiffs have not pled the elements of this claim, because the unjust enrichment claim rests on the same set of facts they advance in support of their fraud and UCC claims. Because the fraud and UCC claims are deficient, Defendants assert, the element of unjustness is not present. However, the Court declines to dismiss Plaintiffs' fraud and UCC claims at this time. Accordingly, Plaintiffs have adequately pleaded Defendants unjustly retained the $100,000 purchase price at Plaintiffs' expense. Further, Oklahoma law allows a plaintiff to plead alternative claims for relief, provided that there is no double recovery for the same injury. *See Burlington*, 505 F.3d at 1030. Therefore, dismissal of the unjust enrichment claim is unwarranted.

## VI. Breach of Contract for the Sale of Goods (Count 5)

Lastly, Defendants argue Plaintiffs fail to state a claim for breach of contract. A breach of contract claim has three elements: "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001).

First, Defendants argue this claim should be dismissed with respect to Finley, because Plaintiffs allege no facts showing Finley entered into an agreement with Plaintiffs, breached such an agreement, or took any of the $100,000 purchase

17

money. However, the Complaint alleges that "Finley was selling Clear Boggy" because she was planning her wedding and did not have time to compete on the horse. (Dkt. 2, ¶ 11). The Complaint also alleges Finley promoted the horse for sale on social media, including posting videos depicting Clear Boggy's performance. (*Id.* ¶¶ 12-13). Plaintiffs allege Finley breached her obligation of good faith in performance of the contract, because she misled Plaintiffs regarding Clear Boggy's health and performance. (*Id.* ¶ 21, 27-28). The UCC specifically imposes an obligation of good faith performance in every contract. *See* 12A Okl. St. § 1-304 (imposing "an obligation of good faith" in the performance and enforcement of every contract of duty within the UCC); 12A Okl. St. § 1-201(20) (defining "good faith" within the UCC as "honesty in fact and the observance of reasonable commercial standards of fair dealing"); *Murray v. D&J Motor Co., Inc.*, 958 P.2d 823, 828 (Okla. Civ. App. 1998) ("good faith" under the UCC requires "honesty in fact," or "the Buyer is entitled to get what she or he paid for.").

Moreover, as Plaintiffs point out, even if Finley was not a direct party to the contract, the Complaint alleges she was at least a third-party beneficiary to the sale. *See Keel v. Titan Const. Corp.*, 639 P.2d 1228, 1231 (Okla. 1981). At this stage of the case, the Court will not dismiss Finley simply because it is unclear whether she actually benefited financially from the sale of Clear Boggy. Such facts may be

learned during discovery. Defendants' request to dismiss the breach of contract claim against Finley is denied.

Second, Defendants contend this clam should be dismissed with respect to Betty Roper. Although Defendants concede a contract was formed between Plaintiffs and Betty Roper, Defendants assert Plaintiffs failed to establish a breach of warranties or actionable representations that could entitle Plaintiffs to a return of their money or damages. However, as explained above, Plaintiffs have stated claims for breach of implied warranties, fraud and deceit, and unjust enrichment against Betty Roper. The Complaint alleges Plaintiffs and Betty Roper contracted for a 1-D competitive barrel racing horse, but Betty Roper misled Plaintiffs regarding Clear Boggy's medical history and ability to perform in reaching the agreement. (Dkt. 2, ¶¶ 11-16). Essentially, Plaintiffs claim Betty Roper failed to bargain in good faith and contract with Plaintiffs for the sale of the horse, because she knew of the horse's prior injury and inability to complete a race course but withheld the information while negotiating for the sale. (*See, e.g., id.* ¶¶ 21, 27-28). Accordingly, the Court denies Defendants' request to dismiss the breach of contract claim against Betty Roper.

## CONCLUSION

For the reasons detailed above, Defendants' Motion to Dismiss (Dkt. 17) is **DENIED**.

**IT IS SO ORDERED** this 1st day of March, 2018.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma